John Tehranian (Bar No. 211616)
jtehranian@onellp.com
Jennifer A Mauri (Bar No. 276522)
jmauri@onellp.com
**ONE LLP**
23 Corporate Plaza Suite
Suite 150-105
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

*Attorneys for Plaintiff*, Scott Hargis, d/b/a Scott Hargis Photo

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

SCOTT HARGIS, d/b/a SCOTT HARGIS PHOTO, an individual,

Plaintiff,

v.

J SING, LLC, d/b/a ALLSUMHOME.COM and EXBRITE, a Delaware limited liability corporation; and DOES 1-10, inclusive

Defendants.

Case No.: 2:25-cv-8829

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

Plaintiff Scott Hargis, d/b/a Scott Hargis Photo ("Plaintiff" or "Hargis"), complains against Defendants J Sing, LLC, d/b/a allsumhome.com and ExBrite, a Delaware limited liability company, and DOES 1-10, inclusive (collectively, "Defendants," or "J Sing") as follows:

## JURISDICTION AND VENUE

1. This is a civil action seeking damages and injunctive relief against Defendants for willful copyright infringement in violation of the United States Copyright Act, 17 U.S.C. §§ 101 et seq.

2. This Court has subject matter jurisdiction under the United States Copyright Act, 17 U.S.C. § 501(a), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (copyright).

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(a) in that Defendants are found and regularly transact business in this District, and the injury suffered by Hargis occurred as a result of Defendants' use of his Photograph to advertise their services in this District.

4. This Court has personal jurisdiction over Defendants. Defendants have engaged in continuous and systematic business in the state of California, and, upon information and belief, derive substantial revenues from commercial activities in California and they advertise as such on their website. Specifically, Defendants' Allsumhome website and, notably, the specific infringing post at issue in this case, purposefully directs its services at California consumers through multiple installation services, including "California Shower Wall & Base Installation," "California Mirror Cabinet & Light Installation," and "California Shower Door Installation." Indeed, Defendants' website does not specifically target any other state by name. Defendants advertise their partnerships with "local installation teams in CA," including, on information and belief, installation teams in this District. Among other things, Defendants, who do business as ExBrite and Allsumhome, upon

information and belief, also have a physical store in this District called ExBrite Home and Bath, located at 1460 E Cedar St, Ontario, California 91761. In addition, the front page of Defendants' website also targets consumers in this District by prominently featuring a testimonial from a customer in Los Angeles, praising the quality of Defendants' products, service, and installation, and the testimonial includes a link to Defendants' products. Thus, Defendants have engaged in a multiplicity of acts directed toward California, including without limitation, regularly and systematically soliciting and engaging in numerous commercial transactions with California-based clients. Defendants therefore purposefully directed their infringing blog post about bathroom lighting (featuring Plaintiff's image illustrating bathroom lighting) at California consumers, including, on information and belief, consumers in this District, in order to sell them "California Mirror Cabinet & Light Installation" services. As a result, besides Defendants' active and purposeful engagement with, and substantial, continuous and systematic business ties to, California and this judicial district, there is a direct and substantial nexus between Plaintiff's claims in this case and Defendants' purposeful availment of the privilege of conducting activities within California and in this judicial district.

## PARTIES

5. Scott Hargis, d/b/a Scott Hargis Photo, is an individual residing in Oakland, California.

6. J Sing, LLC, d/b/a allsumhome.com and ExBrite, is a Delaware limited liability company with its principal place of business at 16192 Coastal Hwy, Lewes, Delaware 19958.

7. Does 1 through 10, inclusive, are unknown to Hargis, who therefore sues said Defendants by such fictitious names. Hargis will ask leave of court to amend this Complaint and insert the true names and capacities of said Defendants when the same have been ascertained. Hargis is informed and believes and, upon such, alleges that each of the Defendants designated herein as a "Doe" is legally responsible in some

manner for the events and happenings herein alleged, and that Hargis's damages as alleged herein were proximately caused by such Defendants.

8. Hargis is informed and believes, and based thereon alleges, that at all times herein relevant, each of the Defendants was the agent, alter-ego, servant, or employee of the remaining Defendants, and each was acting within the course and scope of such agency/employment relationship and with the knowledge and consent of the remaining Defendants.

## FACTS

### *Hargis and His Copyrighted Works*

9. Hargis is a widely recognized architectural photographer based in the San Francisco Bay area. Hargis's photographs have appeared in numerous publications including *This Old House*, *Luxe Magazine*, *Dwell*, *The New York Times*, *The Wall Street Journal*, *Oakland Magazine*, *San Francisco Magazine*, *Diablo Magazine*, *Better Homes & Gardens, The San Francisco Chronicle*, and *The Los Angeles Times*.

10. Hargis is sought after by architectural and design firms around the world, including Woods Bagot, Gensler, Handel, SOM, and many others.

11. He is the author of the acclaimed book "The Essential Guide to Lighting Interiors," and frequently travels throughout North America and the world on assignment. A member of the International Association of Architectural Photographers, Hargis shares his expertise with students at workshops throughout North America, Europe, Australia, and the Middle East.

12. Among the countless photographs he has created in his career is a photograph of a modern bathroom (the "Photograph"), a true and correct copy of which is attached as Exhibit A. The Photograph is carefully composed to showcase various subject matter within the bathroom such as a skylight, the tiled floor and walls, the glass shower door, and the overhead lighting.

13. The Photograph, which serves as the subject matter of this dispute, was registered with the United States Copyright Office on February 20, 2019, under registration number VA 2-140-916. Hargis is listed as the author and copyright claimant of the Photograph. As the author, Hargis owns and exclusively controls the rights to reproduce, adapt, distribute, and publicly display the Photograph.

14. As a professional photographer, Hargis's livelihood depends on his ability to generate revenue from his photographs. Like other photographers, he would suffer serious financial injury if his copyrights were not enforced. This would adversely impact his livelihood and ability to create new works.

***J Sing's Infringing Conduct***

15. J Sing owns and operates the website allsumhome.com (the "Website") under the banner "ExBrite USA," which sells bathroom fixtures such as medicine cabinets, shower doors, and vanities. It bills itself on the Website as "Your Bathroom Expert" and runs a blog that features home décor and renovation projects using products sold on the Website. The Website also offers installation services in California for various bathroom fixture products. Thus, J Sing not only infringed Hargis's copyrighted work, but did so in order to deliberately target consumers in California.

16. J Sing has, without permission or compensation to Hargis, reproduced, modified, distributed, and publicly displayed unauthorized copies of the Photograph and/or derivatives thereof wholesale on the Website. Attached hereto as Exhibit B are true and correct screen-captures evidencing J Sing's unauthorized commercial exploitation of the Photograph on its Website.

17. J Sing has done so for blatantly commercial purposes, exploiting the Photograph to showcase the Website in an attractive and sophisticated light as part of their advertising efforts so that they can entice prospective home owners, buyers, renovators, or contractors to buy products from Defendants' Website instead of from those of competitors.

18. J Sing is able to garner significant attention for the Website by featuring the Photograph on the Website. The Photograph, a unique work in and of itself, showcases a modern bathroom with new and attractive fixtures within the Website in a sleek and professional manner, undoubtedly playing an important role in J Sing's marketing and promotional efforts intended to attract prospective home owners, buyers, renovators, or contractors to buy products from Defendants' Website instead of from those of competitors. Among other things, this attention—a direct consequence of the infringement—has translated into substantial ill-gotten commercial advantage and revenue for J Sing.

19. J Sing's acts of infringement are willful because, inter alia, it is a sophisticated, for-profit entity with full knowledge of the strictures of federal copyright law and the basic requirements for licensing copyrighted content. J Sing itself actively protects its own copyrights, as demonstrated by the "©" notice it placed on the Website.

20. In addition, J Sing's own Website corroborates its sophisticated understanding of United States copyright law. The very first section of the Terms of Service page of the Website states, "[y]ou may not use our products for any illegal or unauthorized purpose nor may you, in the use of the Service, violate any laws in your jurisdiction (including but not limited to copyright laws)." Section 12 of the Terms of Service also states, in relevant part, "you are prohibited from using the site or its content . . . to infringe upon or violate our intellectual property rights or the intellectual property rights of others." Thus, J Sing fully understands how to use copyright law to protect its intellectual property rights, and it also understands the value of intellectual property rights to others.

21. Furthermore, J Sing's willfulness is evident from the way it misrepresented its actions in response to Hargis's July 7th Cease & Desist letter. When confronted with its infringing conduct, J Sing doubled down. It claimed that the Photograph "appeared only as a small thumbnail image displayed alongside a blog

title" and the "blog post itself did not contain the image." This was demonstrably false – the blog post included the image in high resolution at large-scale. *See Ex. B*.

22. In addition to this easily disprovable statement, J Sing's initial response to Hargis's Cease & Desist letter claimed that "our product listings rely solely on in-house images created for our actual products." Tellingly, J Sing later changed its story to claim that it obtained the rights to use the Photograph via a "paid-membership website." It never revealed this name of this website, and to date still has not provided any evidence of its supposed existence.

23. Perhaps most brazenly of all, J Sing claimed it used the Photograph "without any intent to promote our products, our brand, or our business," and that the blog article in question "did not advertise, describe, or feature our company, our brand, or any of our products." A cursory glance at the article puts the lie to J Sing's statements. The blog post's title is "Allsumhome Bathroom Lighting Lumens: Providing Appropriate Illumination for Your Bathroom." The article itself features no less than eight references to products on the Website that can meet those lighting needs, including medical cabinets, lighted mirrors, ceiling fixtures, wall sconces, LED fixtures, and more. It also includes a clickable link directly to the Website's products. There is no more clear-cut example of advertising than a company's blog post featuring an image of a well-lit bathroom, a description of lighting products, and a link to browse and purchase those products from that company. Despite its misrepresentations, J Sing's infringing conduct was clearly commercial. It impermissibly used the Photograph to sell products and services on its Website.

24. At all relevant times, therefore, Defendants clearly knew of the need for proper licensing of the Photograph and failed to obtain proper authorization for the uses detailed herein. When confronted with this, Defendants attempted to obfuscate, deflect, or misrepresent their prior conduct, despite all evidence to the contrary, and declined to resolve this matter on any reasonable basis, thereby necessitating litigation.

25. As a result of their willful infringement of Hargis's copyrights, Defendants face statutory damages of up to $150,000 per infringed work for their unlawful actions, exclusive of attorneys' fees.

**FIRST CLAIM FOR RELIEF**

**(Copyright Infringement, 17 U.S.C. § 501)**

26. Hargis incorporates herein by reference the allegations in paragraphs 1 through 25 above.

27. Hargis owns all copyrights in and to the Photograph, which are valid and subsisting under the laws of the United States.

28. Hargis has complied in all respects with the Copyright Act and all of the laws of the United States governing copyrights, and the Photograph has all been timely registered with the United States Copyright Office.

29. Defendants, without the permission or consent of Hargis, reproduced, adapted, distributed, and publicly displayed unauthorized copies of the Photograph shown in Exhibit A hereto. Such acts constitute infringement of Hargis's exclusive rights under copyright pursuant to 17 U.S.C. §§ 106 & 501.

30. In addition, Defendants, without the permission or consent of Hargis, knowingly encouraged, induced, materially contributed to, and/or facilitated the unauthorized reproduction, adaptation, distribution, and public display of unauthorized copies of the Photograph shown in Exhibit A hereto, and has the right and ability to stop or limit the infringement and a direct financial interest in such infringing activities.

31. Defendants are therefore directly and secondarily liable for infringement under the Copyright Act.

32. Each of the Defendants directly and individually performed the acts alleged herein, and also did so jointly and in concert with one another, or as an agent or alter ego of the other. Accordingly, each of the Defendants are liable for all of the

acts alleged herein because they were the cause in fact and proximate cause of all injuries Hargis has suffered.

33. The infringement of Hargis's rights in each of his respective copyrighted works constitutes a separate and distinct act of infringement.

34. Defendants' unlawful conduct, as set forth above, was willful, intentional, and purposeful, in disregard of and with indifference to Hargis's rights.

35. Defendants' wrongful acts have caused, and are causing, great injury to Hargis, of which damages cannot be accurately computed, and unless this Court restrains Defendants from further and continuing commission of said acts, Hargis will suffer irreparable injury, for all of which he is without an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Hargis requests judgment against Defendants as follows:

a. For a declaration that Defendants willfully infringed Hargis's copyrights;

b. For such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Hargis's copyrights, including preliminary and permanent injunctive relief requiring Defendants, and their officers, agents, servants, employees, representatives, and attorneys, and all persons in active concert or participation with them to permanently cease from designing, copying, reproducing, displaying, promoting, advertising, distributing, or selling, or any other form of dealing or transaction in, any and all advertising and promotional materials, print media, signs, Internet websites, or any other media, either now known or hereafter devised, bearing any image or design which infringes Hargis's copyrights or exclusive rights under Copyright;

c. For statutory damages pursuant to 17 U.S.C. § 504(c), in the maximum amount provided by law, as may be proven at trial, arising from Defendants' willful violations of Hargis's rights under the Copyright Act or, in the alternative, at Hargis's

election pursuant to 17 U.S.C. § 504(b), Hargis's actual damages, including Defendants' profits from infringement, in amounts to be proven at trial;

d. For an order pursuant to 17 U.S.C. § 503 requiring Defendants to deliver up for destruction or other reasonable disposition all copies made or used in violation of Hargis's respective copyrights;

e. For an order pursuant to 17 U.S.C. § 505 awarding Hargis his costs in this action, including his reasonable attorneys' fees;

f. For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendants; and

g. For any such other and further relief as the Court may deem just and appropriate.

Dated: September 17, 2025

**ONE LLP**
By: /s/ John Tehranian
John Tehranian
Jennifer A. Mauri

*Attorneys for Plaintiff,*
Scott Hargis, d/b/a Scott Hargis Photo

# **DEMAND FOR JURY TRIAL**

Plaintiff Scott Hargis, d/b/a Scott Hargis Photo hereby demands trial by jury of all issues so triable under the law.

Dated: September 17, 2025

**ONE LLP**

By: /s/ John Tehranian
John Tehranian
Jennifer A. Mauri

*Attorneys for Plaintiff,*
Scott Hargis, d/b/a Scott Hargis Photo